## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

    **Plaintiff,**

        **v.**                   **Criminal No.** 14-164 (FAB)

IVAN CIDRAZ-SANTIAGO [5],

    **Defendant.**

### MEMORANDUM AND ORDER

BESOSA, District Judge.

    Before the Court are the United States' motion requesting detention[1] of defendant Ivan Cidraz Santiago, (Docket No. 103), and the defendant's opposition (Docket No. 170).  For the reasons that follow, the Court **GRANTS** the United States' motion for detention, and **REVOKES** defendant Cidraz's release order (Docket No. 148).

### I.   Background

    Defendant Ivan Cidraz Santiago is charged with participating in a drug trafficking conspiracy between 2003 and 2014.  The charges against him in the indictment include conspiracy to possess firearms in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(o), and conspiracy to possess with intent to distribute controlled substances (including crack, heroin, cocaine, marijuana, Oxycodone (Percocet), and Alprazolam (Xanax))

---

[1] Because the magistrate judge ordered the defendant's release (Docket Nos. 148 & 252), the Court views the government's motion as one requesting revocation of the magistrate judge's release order pursuant to 18 U.S.C. § 3145(a)(1).

within 1,000 feet of the La Ceiba Public Housing Project in Ponce, Puerto Rico, all in violation of 21 U.S.C. §§ 841(a)(1), 846, and 860.  (Docket No. 3.)  At a detention hearing held pursuant to 18 U.S.C. § 3142(f) on March 21, 2014, the government moved for pretrial detention, contending that no condition or combination of conditions would reasonably assure defendant Cidraz's appearance at trial or the safety of the community.   (Docket Nos. 148 & 252.) Defendant voiced numerous objections to the pretrial services report regarding missing or inaccurate information about Cidraz's employment, military service, and personal assets.  (Docket No. 252 at pp. 5-8.)  He also presented letters written by residents and administrators at La Ceiba as well as by a local baseball program to attest to Cidraz's good character and to dispute any danger posed to the community.  Id. at pp. 8-10.  Cidraz's mother, Lillian Santiago Martinez-Ramirez, attended the hearing as a proffered third-party custodian, and offered both that her son live with her in Coamo and that her house be used as security for Cidraz's bail. Id. at pp. 10-11.  Without explaining the basis for his decision, Magistrate Judge Bruce McGiverin granted defendant Cidraz bail and set the conditions for his release:  bail was set at $120,000.00, with $80,000.00 secured by Cidraz's mother's home; home detention was imposed with electronic monitoring; and Cidraz was prohibited from residing or visiting the La Ceiba Public Housing Project for any reason.  Docket No. 148.

On the same day as the bail hearing, the government moved the Court to revoke the magistrate judge's order granting Cidraz bail, or, in the alternative, to stay the order and hold a *de novo* detention hearing.  (Docket No. 103.)  The grounds for the government's requests are that Cidraz's proffer of evidence at the bail hearing did not rebut the presumptions of risk of flight or danger to the community.  The Court granted the government's request to stay the release order, and ordered Cidraz to respond. (Docket No. 104.)  On March 28, 2014, Cidraz filed an opposition to the government's motion.  (Docket No. 170.)

## II.  Legal Standard

### A.    The Bail Reform Act

The Bail Reform Act provides the procedural and substantive rules for determining the appropriateness of pretrial detention for defendants.  18 U.S.C. § 3142.[2]  In determining whether pretrial detention is warranted, a judicial officer must consider the statutory factors set forth in 18 U.S.C. § 3142(g): (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the defendant's

---

[2] Pursuant to the Act, the Court may: (1) release the defendant on personal recognizance or upon execution of an unsecured bond; (2) release the defendant on conditions; (3) temporarily detain the defendant to permit revocation of conditional release, deportation, or exclusion; or (4) detain the defendant.  18 § 3142(a).

history and characteristics;[3] and (4) the danger that would be posed to the community by the defendant's release. United States v. Tortora, 922 F.2d 880, 884 (1st Cir. 1990). To support an order of detention, the government must establish that a defendant poses (1) a risk of flight by a preponderance of the evidence, or (2) a danger to the community by clear and convincing evidence. United States v. Patriarca, 948 F.2d 789, 791-93 (1st Cir. 1991). "Detention determinations must be made individually and, in the final analysis, must be based on evidence which is before the court regarding the particular defendant." Tortora, 922 F.2d at 888 (internal citations omitted).

**B.  Standard of Review for a Release Order**

If a magistrate judge orders the release of a defendant, the government may move the district court for a revocation of the order.  18 U.S.C. § 3145(a); United States v. Godines-Lupian, 816 F. Supp. 2d 126 (D.P.R. 2011) (Gelpi, J.).  A district court reviews the magistrate judge's order de novo, Tortora, 922 at 883 n.4 (1st Cir. 1990), and need not defer to the magistrate judge's findings or give specific reasons for rejecting them.  United

---

[3] This factor includes consideration of:  (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and (B) whether, at the time of the current offense, the person was on probation, parole, or other pre-trial release. 18 U.S.C. § 3142(g).

States v. Koenig, 912 F.2d 1190, 1191-92 (9th Cir. 1990); United States v. Leon, 766 F.2d 77, 80 (2d Cir. 1985); United States v. Delker, 757 F.2d 1390, 1394-95 (3d Cir. 1985); United States v. Medina, 775 F.2d 1398, 1402 (11th Cir. 1985). A district court may take additional evidence or conduct a new evidentiary hearing when appropriate. Koenig, 912 F.2d at 1193; Delker, 757 F.2d at 1393-94; United States v. Fortna, 769 F.2d 243, 250 (5th Cir. 1985). The need for a hearing depends on whether the defendant has placed relevant facts at issue, that is, "whether [defendant's] submissions . . . were adequate to raise a disputed factual issue that was necessary to decide his motion. . . ." United States v. Alonso, 832 F. Supp. 503, 504-505 (D.P.R. 1993) (citing United States v. Sophie, 900 F.2d 1064, 1071 (7th Cir. 1990)).

## III. Discussion

### A.   Bail Reform Act Presumptions

The ultimate question presented to the Court is whether any condition or combination of conditions can be placed on defendant Cidraz's release such that he will appear in court and not pose a threat to the community's safety. The Bail Reform Act of 1984 sets forth a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the accused and the safety of the community if there is probable cause to believe that the accused committed an offense for which he may receive a sentence of imprisonment for ten or more years

pursuant to the Controlled Substance Act, 21 U.S.C. § 801.  United States v. Dillon, 938 F.2d 1412, 1416 (1st Cir. 1991) (citing 18 U.S.C. § 3142(e)); United States v. O'Brien, 895 F.2d 810, 814-15 (1st Cir. 1990).  The return of an indictment is sufficient to fulfill the probable cause prerequisite and invoke the presumption. United States v. Vargas, 804 F.2d 157, 163 (1st Cir. 1986).  In this case, the presumption is triggered by the indictment's drug-related counts 1-5, which mandate a minimum sentence of ten years. 18 U.S.C. § 3142(f)(1)(C).  It is presumed, therefore, that no set of conditions will reasonably assure Cidraz's appearance or the safety of the community.  United States v. Jessup, 757 F.2d 378, 380 (1st Cir. 1985).

Although the government maintains the burden of persuasion when the presumption applies, the burden of production shifts to the defendant.  Jessup, 757 F.2d at 380-84.  To rebut the presumption, therefore, defendant Cidraz is required to produce some "conflicting evidence" in order to show that "what is true in general is not true in the particular case before [the Court]." United States v. Perez-Franco, 839 F.2d 867, 870 (1st Cir. 1988) (internal citation omitted).  In "determin[ing] on which side the evidence preponderates," Jessup, 757 F.2d at 383 (citation omitted), the Court must keep in mind Congress' finding that "flight to avoid prosecution is particularly high among persons charged with major drug offenses . . . [and that] drug traffickers

often have established ties outside the United States . . . [and] have both the resources and foreign contacts to escape to other countries." Id. at 384 (citing S. Rep. No. 225, 98th Cong., 1st Sess. 19, 20 (1983)).  To make its bail decision, therefore, the Court must incorporate Congress' finding that "as a general rule, [drug offenders] pose special risks of flight," among the other special factors of 18 U.S.C. § 3142(g).  Jessup, 757 F.2d at 384.

**B.    Section 3142(g) Factors**

**1.    The Nature and Circumstances of the Offense Charged**

Defendant Cidraz is charged in a conspiracy together with sixty-two others (1) to possess with intent to distribute, and (2) to aid and abet each other, in the possession/distribution of 280 grams or more of a mixture or substance containing cocaine base ("crack"), 1 kilo or more of heroin, 5 kilos or more of cocaine, and 100 kilos or more of marijuana.  (Docket No. 3 at pp. 6-26.) He is also charged with conspiracy to possess firearms in furtherance of the drug trafficking crimes.  Id. at p. 27.  The indictment claims that Cidraz was a drug point owner who directly controlled and supervised the drug trafficking activities at the drug distribution points located within the La Ceiba Public Housing Project and other areas near Ponce, Puerto Rico.  Throughout the conspiracy, drug point owners would purchase wholesale amounts of narcotics, which were then prepared within the La Ceiba Public Housing Project and Ponce for street distribution.

The scope and seriousness of the alleged offenses weigh heavily in favor of finding that defendant Cidraz poses a risk of flight.  Cidraz faces at least ten years in prison, because each count related to drug crimes carries a statutory minimum of ten years to life.[4]  See 21 U.S.C §§ 841(a)(1) & 860.  Moreover, a conspiracy to distribute 280 grams or more of cocaine base ("crack"), 1 kilo or more of heroin, 5 kilos or more of cocaine, and 100 kilos or more of marijuana, qualifies as a major drug crime. See United States v. Valdivia, 104 F.App'x. 753, 754 (1st Cir. 2004) (per curiam) (finding that evidence of the defendant's participation in an organization that imported 60 to 80 kilograms of heroin was sufficient to characterize the offense as the kind of "major drug offense" the presumption was designed to address).  Although Cidraz put forth evidence at the initial bail hearing, none of the evidence addresses, much less neutralizes, the significant weight of the first factor.

**2.    The Weight of the Evidence Against the Defendant**

Also of significant weight is the government's evidence against Cidraz, which includes at least six witnesses who are expected to testify that Cidraz has been a drug point owner at the La Ceiba Public Housing Project since approximately 1999 until

---

[4] For a conviction on the weapons charge, defendant Cidraz could serve up to 20 years, but the Court would have discretion as to whether that term of imprisonment would be served concurrently or consecutively with the drug charges.  See 18 U.S.C. § 924(o).

the day of the indictment.  (Docket No. 252 at p. 4.)  Three of
those witnesses are expected to testify that they have seen Cidraz
possess firearms at the drug point.  Id. at pp. 4-5.  At least
three witnesses are expected to testify that Cidraz was one of the
individuals with supervisory authority over the drug points at La
Ceiba, that he was "in charge," and that he gave instructions and
orders to both members of the organization and residents of the
housing project.  Id. at p. 5.  The government also possesses one
audio recording of a phone call in which Cidraz allegedly quotes a
price for pounds of marijuana.  Id.  Given that Cidraz's proffer of
evidence does not address the weight of the evidence against him,
the Court finds the second factor to also weigh heavily in favor of
a finding that his release would present a risk of flight and
danger to the community.

> **3.   The History and Characteristics of the Defendant**

Cidraz argues that the pretrial services report is
"totally unreliable" because it fails to mention that Cidraz served
in the military from 2003 to 2006 in Kuwait and Iraq;[5] that it did
not take into account Cidraz's part-time work washing cars; and
that he is no longer in possession of the 1999 Camry and 2004/2005
motorcycle listed in the report.  (Docket No. 170 at pp. 2-3.)  The
Court does not find that these facts, even if true, impact in any

---

[5] Cidraz did not serve in Iraq; he served in Kuwait in support
of Operation Iraqi Freedom, as indicated in one of his DD Forms 214
(Docket No. 331-1).

way Cidraz's flight risk or danger to the community.  Cidraz's DD
Forms 214, Reports of Separation from Active Duty, demonstrate that
he actively served in the military from February 5, 2003 to June 6,
2003, apparently a 6-week course at Fort Leonard Wood, MO, to
obtain his Military Occupational Specialty as a crane operator, as
well as from December 7, 2003 to February 18, 2005, when he was
activated to participate in Operation Iraqi Freedom.  (Docket
No. 331-1.)  Cidraz's active military service for a total of one
year and six months does not preclude the conclusion that he indeed
engaged in the drug trafficking conspiracy, as the indictment
charges, within the eleven-year period between 2003 and 2014.
Neither does defense counsel's allegation that Cidraz obtained
part-time employment lead the Court to conclude that the pretrial
service report is entirely unreliable.  The report indicates that
Cidraz himself was interviewed, and that his consensual partner,
Luz Velazquez, verified the background information.  Furthermore,
simply because Cidraz allegedly worked part-time as a car washer
does not necessarily negate the charges in the indictment that he
worked as a drug-point owner.  The argument that he no longer owns
the vehicles listed in the pretrial services report is so
inconsequential that it is hardly worth mentioning.  Accordingly,
the Court gives no credence to the argument that possible
inaccuracies or omissions in the pretrial services report weigh in
Cidraz's favor on the third prong.

The following considerations, on the other hand, do pertain to the analysis:  Cidraz has no prior history of arrests, convictions, mental illness, or substance abuse; he has two years of college education and has resided in Puerto Rico since he was 10 years old; his mother is willing both to post her home as surety for his bail and to act as his third party custodian at her house, which is in Coamo, "far away" from La Ceiba; Cidraz has a stable three-year relationship with a girlfriend and fathered a three-year-old son with her; his girlfriend and son have offered to live at Cidraz's mother's home with him if he is released; he is willing to wear an electronic device and agrees to home detention; and he is highly regarded at La Ceiba, due to his involvement in sports and activities (baseball, basketball, softball, and dominos) with children and adults.  (Docket No. 170 at pp. 3–4.)  Additionally, defense counsel presented letters of support from the Council leaders of La Ceiba, six residents of the housing project, and the Las Bayas Baseball Club, all of which he claims "portray a totally different picture of [the] defendant . . . and establish that defendant is not a danger to the community."  Id. at p. 4.

Defendant Cidraz's proffer of evidence on this factor weighs neither in favor of nor against a finding of dangerousness or flight risk.  The evidence indicates that Cidraz has strong ties to his community.  As the government points out, however, authoritative members in drug trafficking organizations

often exercise great power in and control over the communities in which the organization's drug points are located.  It is not uncommon for those leaders to demand allegiance of the community as well as compliance with the organization's rules.  This case appears to exemplify such an arrangement.  The government informs that "[w]itnesses in this case have testified that the organization had established a 'code of silence' among the members of the community in which the organization solved all disputes and residents were not allowed to seek the assistance of the police when they were victims of crime at the housing project." (Docket No. 103 at p. 3.)  The Court, therefore, does not place great weight on the evidence attesting to Cidraz's "high regard" and "positive influence" in the community.

### 4. The Danger Posed to the Community by the Defendant's Release

As discussed above, the Court is unpersuaded by Cidraz's proffer of letters explaining that he does not pose a danger to the community.  Even considering Cidraz's evidence emphasizing his strong family ties; his family's willingness to take custody of him and finance his bail; his part-time employment; and his lack of criminal history, drug or alcohol abuse, violence, or mental illness, the government has established by clear and convincing evidence that Cidraz's release would pose a danger to the community.  "Congress has made it clear that an 'especially significant' danger to the community is the risk that the drug

network will continue to function while defendant awaits trial." United States v. Arroyo-Reyes, 32 F.3d 561, (1st Cir. 1994) (citation omitted). The government claims to have one witness who would testify that Cidraz has an additional drug point in the area of Coamo, which is precisely where he would be released under the magistrate judge's conditions. In addition to the evidence upon which the Court bases its finding of risk of flight, the government has proffered sufficient evidence that Cidraz deals and has dealt in trafficking large amounts of drugs. His release, therefore, would pose a danger of continued drug trafficking to the community.

**IV. Conclusion**

The Court finds that the facts giving rise to the presumption against defendant Cidraz's release weigh heavily in favor of detention. See Palmer-Contreras, 835 F.2d 15, 18 (1st Cir. 1987) ("[E]ven after a defendant has introduced some evidence to rebut the flight presumption, the presumption does not disappear, but rather retains evidentiary weight . . . ."). The drug conspiracy alleged in this case closely resembles "the highly lucrative drug operations at the center of congressional concern." Jessup, 757 F.2d at 386. The Court does not find Cidraz's proffer sufficient to distinguish his case from the general "fact found by Congress — that drug traffickers pose special risks of flight." United States v. Perez-Franco, 839 F.2d 867, 870 (1st Cir. 1988). Nor does the evidence outweigh the government's clear and convincing evidence

that "harm to society caused by narcotics trafficking[,] [which] is encompassed within Congress's definition of 'danger,'" will occur with Cidraz's release.  See United States v. Leon, 766 F.2d 77, 81 (2d Cir. 1985) (citing S. Rep. No. 98-225, at 15 (1983)).[6]  Having reviewed the indictment, the parties' submissions, the record of the proceedings before the magistrate judge, and the pretrial services report, the Court is concerned that defendant Cidraz is a flight risk and that his pretrial release would pose a danger to the community.  There are no conditions of release or combination of them that would reasonably assure defendant Cidraz's appearance in court or the safety of the community.  Accordingly, the magistrate judge's order granting bail to defendant Cidraz (Docket No. 148) is **REVOKED,** and defendant Ivan Cidraz-Santiago is **ORDERED DETAINED WITHOUT BAIL PENDING TRIAL.**

       **IT IS SO ORDERED.**

       San Juan, Puerto Rico, May 13, 2014.


                                   s/ Francisco A. Besosa
                                   FRANCISCO A. BESOSA
                                   United States District Judge

_____

       [6] Because defendant Cidraz's submissions were not adequate to raise a disputed factual issue necessary to decide his motion, the Court finds no need for a *de novo* hearing.